UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARY DAVIS<br>Plaintiff,<br><br>v.<br><br>NATIONWIDE DEBT<br>MANAGEMENT<br>SOLUTIONS, L.L.C.<br>Defendant. | Case No: 2:12-cv-15694-JAC-RSW<br>Hon: Julian Abele Cook Jr. |

PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

Plaintiff moves for entry of a default judgment, pursuant to Fed. R. Civ. Pr. against Defendant and for Plaintiff in the amount of $3,000.00 for damages, reasonable attorney fees to Andrew L. Campbell in the amount of $1,687.50 and $420.00 in costs. I support of this motion, Plaintiff says:

1. Defendant has failed to appear or otherwise defend and its default was entered on February 28, 2013, Doc. # 6.

2. Plaintiff's entitlement to the relief requested is demonstrated by his brief filed in support hereof and plaintiff's affidavit and other documents filed in support.

Dated: April 8, 2013

/s/*Andrew L. Campbell*
Andrew L. Campbell
Attorney for Plaintiff
653 S. Saginaw Street, Suite 201
Flint, MI 48502
(810) 232-4344
hundy24@yahoo.com
P64391

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARY DAVIS<br>Plaintiff,<br><br>v.<br><br>NATIONWIDE DEBT<br>MANAGEMENT<br>SOLUTIONS, L.L.C.<br>Defendant. | Case No: 2:12-cv-15694-JAC-RSW<br>Hon: Julian Abele Cook Jr. |

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION FOR ENTRY OF DEFAULT JUDGMENT**

FACTS

This case concerns a debt collector's illegal attempts to collect a consumer debt. Defendant made deceptive or misleading statements when attempting to collect a debt from Plaintiff including continuing to contact Plaintiff at her place of employment after instructions that that was not allowed by her employer and revealing information about the debt to a third-party not authorized to receive it. Defendant's acts violate multiple provision of the Fair Debt Collection Practices Act.

Mary Davis incurred a debt to My Cash Now that went into default and was assigned to Defendant. (*See* Compl. ¶ 6-7). After being assigned the debt, Defendant then, without a judgment, contacted Plaintiff's employer. (*Id.* at ¶7,8,10). When Defendant attempted to contact Plaintiff, she was not at work so Defendant, without permission from Plaintiff, asked to speak to Plaintiff's supervisor to obtain the fax number. (*See* Aff. ¶ 7 – Exhibit 1 and Compl. ¶ 10). Defendant sent a fax to Plaintiff's employer on December 5, 2012. (*See* Aff ¶ 11 – Exhibit 1).

1

Plaintiff then called Defendant and told her that her employer did not allow such calls and demanded that they stop. (*See* Compl. ¶ 12). After this warning, Defendant then called Plaintiff's supervisor again on December 6, 2012. (*See* Compl. ¶ 15).

Plaintiff then filed this action on December 31, 2012 and served Defendant on January 25, 2012. Defendant failed to plead and the Clerk of the Court entered Default on February 28, 2012. Plaintiff now seeks entry of default judgment in the amount of $2,000.00 in actual damages, $1,000.00 in statutory damages, plus $420.00 in costs and $1,687.50 in attorney fees.

## ARGUMENT

1. **Defendant's acts violate the Fair Debt Collection Practices Act**

As the 6th Circuit court has noted, the FDCPA is "extraordinarily broad," crafted in response to what Congress perceived to be a widespread problem. *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992). Courts use the "least sophisticated consumer" standard, an objective test, when assessing whether particular conduct violates the FDCPA. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006). This standard ensures "that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC.*, 518 F.3d 433, 438 (6th Cir. 2008). (statements "can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate"). Proof of actual deception is not required to demonstrate liability under the FDCPA. *Avila v. Rubin*, 84 F.3d 222, 227 (7th Cir. 1996).

Plaintiff asserts that Defendant violated 15 U.S.C. § 1692e(10), § 1692c(b), and § 1692c(a)(3) when it attempted to collect a debt from her.

    A. **The basis of the call was deceptive and Defendant communicated with Plaintiff's employer without permission or legal authority.**

15 U.S.C. § 1692e(10) states:

2

> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Defendant had no reasonable basis to seek location information from Plaintiff based upon its own acts, the definition of location information pursuant to 15 U.S.C. § 1692a(7) and limits imposed by 15 U.S.C. § 1692b(1)(2):

> The term "location information" means a consumer's place of abode and his telephone number at such place, or <u>his place of employment</u>. (emphasis supplied) - 1692a(7)
>
> Any debt collector communicating with any person other than the consumer <u>for the purpose of acquiring location information</u> about the consumer shall --
>
> (1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;
>
> (2) <u>not state that such consumer owes any debt;</u> (emphasis added) - 1692b(2)

As averred, Defendant called Plaintiff's place of employment on December 4, 2012. As the term "location information" is defined by Congress as either place of employment or place of abode and phone number at place of abode, Defendant by making the call to Plaintiff's employer, demonstrated that it already knew Plaintiff's location information. The call would not have been possible unless Defendant actually knew the name of Plaintiff's employer in the first place. Furthermore, Defendant's call was answered by a call center that confirmed Plaintiff worked there. (*See* Aff. ¶4-7 – Exhibit 1). Had Defendant not asked to be transferred to Plaintiff's supervisor and not faxed the letter or continue to call after being told not to do so by Plaintiff, there would have been a technical statutory violation and nothing more. In short, there was no legal logical basis or rationale for Defendant to ask for Plaintiff's supervisor when it had already confirmed her place of employment. Consequently, the only rationale basis for Defendant's request to speak to Plaintiff's supervisor was to harass Plaintiff into paying a debt.

**B. Talking to Plaintiff's employer without Plaintiff's consent violated the law**

3

The FDCPA restricts third-party contacts as a means to protect the consumer's right to privacy and the security of the consumer's relationships with third parties. 15 U.S.C. § 1692c(b). This right is an extremely important protection by Congress. S. Rep. No. 382, 95th Congr., 1st Sess. 4, *reprinted* in 1977 U.S.C.C.A.N., 1695, 1696. Absent a judgment, nothing within the FDCPA allows a debt collector, in connection with the collection of any debt, to contact a consumer's employer without the prior consent of the consumer. 15 U.S.C. § 1692c(b):

> (b) COMMUNICATION WITH THIRD PARTIES. Except as provided in section 804, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector. (emphasis added).

Therefore, the FDCPA requires that when collecting a debt, a debt collector cannot communicate with anyone other than those listed in 1692c(b) without prior consent of the consumer, unless it is seeking location information. Because Defendant could not have been seeking location information, Defendant was attempting to collect a debt when it called Plaintiff's employer. There are simply no other possibilities for the motive of the debt collector in making a call to a consumer, especially when applying the 'least sophisticated consumer' test. The debt collector was certainly not calling for parenting advice.

Furthermore, the content of the facsimile that was sent to Plaintiff's supervisor sought specific information that clearly hinted that a debt was at issue. For example, the document contained the revealing phrases "Debt Management NATIONWIDE Settlement" at the top right corner of both pages. (*See* Exhibit 2). Additionally, there are questions regarding support orders or creditors' wage garnishments in effect as well. Finally, rather than simply pull her credit report for less than $3.00, Defendant asks Plaintiff's employer to verify the information that it

4

has for her home address. In other words, less invasive means were available for Defendant to use to verify or obtain Plaintiff's home telephone number and there was no need to verify employment as Defendant knew her place of employment.

### C. Defendant continued calls after warning violated the FDCPA

Defendant violated § 1692c(a)(3) when, despite instruction otherwise, it chose to continue to attempt to reach Plaintiff's supervisor.

> 15 U.S.C. § 1692c(a)(3):
>
> (a) COMMUNICATION WITH THE CONSUMER GENERALLY. Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt --
> (3) at the consumer's place of employment if the debt collector <u>knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication.</u> (emphasis added).

Plaintiff informed Defendant that her employer did not allow such calls and demanded that the calls stop. (*See* Aff. ¶ 13-14 – Exhibit 1). Despite, this, Defendant called Plaintiff's place of employment again and left a voicemail message with Plaintiff's supervisor. (*Id.* at ¶ 14). Because Plaintiff contacted Defendant and told them she could receive calls at work, Defendant knew or had reason to know that such contacts were not allowed. Therefore, this act constitutes an additional violation of the FDCPA under 1692c(a)(3).

### D. Strict liability and damages under the FDCPA

The FDCPA is a strict liability statute and therefore Plaintiff is entitled to statutory damages for the above violations under § 15 U.S.C. 1692k(a)(2)(A).

> 15 U.S.C. § 1692k(a)(2)(A) states:
>
> (a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this title with respect to

5

any person is liable to such person in an amount equal to the sum of—

(2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000;

(b) In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors—
(1) in any individual action under subsection (a)(2)(A), the <u>frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional</u>; (emphasis supplied).

Defendant made three illegal contacts prohibited by the FDCPA. (*See* Compl. ¶ 8,15,18) Defendant was persistent because it continued to violate the law even after Plaintiff called it and informed it that Plaintiff could not accept these calls at her workplace. The noncompliance was intentional because it revealed sensitive information that it produced to a non-authorized person in a position to affect Plaintiff's potential future income. Furthermore, there were other less invasive means to obtain the exact information that Defendant allegedly needed.

Other than directly threatening to kill or physically injure someone, there is no greater threat to a person than to threaten employment. While it is true that no direct threat to Plaintiff was made regarding her employment, the fact that the Defendant asked for and spoke with Plaintiff's supervisor without any legal authority or justification, puts Plaintiff in an extremely vulnerable circumstance. How exactly is a consumer supposed to respond when asked about the situation from a supervisor? The discussion is inevitable after all. Does a consumer lie to hide this embarrassing fact and risk losing the trust of its employer? Keep in mind, Plaintiff does not always know exactly what was said to the employer. Does a consumer tell the truth and then risk that this fact will damage their reputation and career? This is the true harm and Plaintiff's basis for maximum statutory damages and an award of actual damages – the social and financial

pressure of the threat of further contacts forces a debtor to pay up just to get the debt collector to stop calling. That is why Defendant's acts are so malicious in nature.

Consequently, Plaintiff believes that she is entitled to the full $1,000.00 in statutory damages, because of the severe, frequent, persistent, and intentional acts of Defendant.

### 2. Plaintiff is entitled to actual damages.

15 U.S.C. § 1692k(a)(1) provides for actual damages for violations of the Fair Debt Collection Practices Act.

> 15 U.S.C. § 1692k(a)(1) states:
>
> (a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this title with respect to any person is liable to such person in an amount equal to the sum of—
> (1) any actual damage sustained by such person as a result of such failure;

In the instant case, Defendant misrepresented that it was seeking location information when it was actually using social pressure to force Plaintiff to pay a debt. (*See* Compl. ¶¶ 40-41). The term "actual damages" however is not defined by Congress in the FDCPA.

### A. Actual damages include emotional distress damages determined on a federal, not state standard

A federal standard should be employed as is clear from 15 U.S.C. § 1692 findings and declaration of purpose:

> **§ 802. Congressional findings and declaration of purpose**
> (a) There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, <u>to the loss of jobs, and to invasions of individual privacy</u>.
> (b) <u>Existing laws and procedures for redressing these injuries are inadequate to protect consumers</u>.
> (c) Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

> (d) Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.
> (e) It is the purpose of this title to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who <u>refrain from using abusive debt collection practices are not competitively disadvantaged</u>, and <u>to promote consistent State action to protect consumers against debt collection abuses</u>.
> (emphasis added).

Congress implemented the FDCPA specifically because abusive debt collectors were causing loss of jobs and invasions of privacy, both of which were threatened or occurred in the instant case. In finding that existing laws and procedures for redressing these injuries were inadequate to protect consumers, Congress wished to promote **consistent** State action to protect consumers against debt collection abuses.

Congress also wanted bad debt collectors punished so that good collectors would have an even playing field. Clearly, Congress saw that state or other federal laws were not addressing these abuses effectively and wished to impose a different standard. The term "consistent" is important because, if the term "actual damages" meant those damages obtainable as determined by state law, there would not be consistent State action. Instead, there would be several different standards employed throughout the nation, allowing bad debt collectors, especially in Michigan because of the high bar to obtaining emotional damages, the opportunity to take advantage of debt collectors operating with the spirit of the law. The result would be more violations and more aggressive acts by collectors in states with a high bar to recover emotional distress damages – thereby promoting inconsistency.

Under cannons of statutory construction, is easy to conclude that the term "actual damages" could constitute emotional distress. If a word or phrase is not defined by statute, it

8

may have an accepted meaning in the area of law addressed by the statute,[1] it may have been borrowed from another statute under which it had an accepted meaning,[2] or it may have had an accepted and specialized meaning at common law.[3] In each of these situations the accepted meaning governs[4] and the word or phrase is considered a technical term or "term of art." Justice Jackson explained why this reliance is appropriate:[5]

> [W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such a case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as departure from them.

At the time of passage of the FDCPA in 1977, case law under the Consumer Credit Protection Act (CCPA), the Fair Credit Reporting Act (FCRA), and the Equal Credit Opportunity Act (ECOA) had awarded damages for emotional distress without proof of state tort elements for emotional distress. *Rasor v. Retail Credit Co.*, 554 P.2d 1041 (Wash. 1976). *Shuman v. Standard Oil Co. of Cal.*, 453 F. Supp. 1150 (N.D. Cal. 1978) and *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829 (8th Cir. 1976). Consequently, because Congress knew of these laws at the time of passage of the FDCPA, it is reasonable to assume that Congress intended actual damages to include emotional distress damages.

---

[1] Sullivan v. Stooper, 496 U.S. 478, 483 (1990) (phrase "child support" as used in Title IV AFDC provisions of Social Security Act).
[2] Carolene Products Co. v. United States, 323 U.S. 18, 26 (1944) (courts will adopt wording of a statute from another legislative jurisdiction carrying with it the previous judicial interpretations of the wording but finding it did not apply.).
[3] Community for Creative Non-Violence v. Reid, 490 U.S. 730, 739-740 (1989) (court relied upon traditional common law agency principles interpreting term "employee" as used without definition in Copyright Act.)
[4] Except when a statutory purpose to the contrary is evident, courts may take it as a given that Congress has legislated with an expectation that the principle will apply. Astoria Federal Savings & Loan Ass'n v. Solimino, 501 U.S. 104, 108 (1991).
[5] Morissette v. United States, 342 U.S. 246, 263 (1952); see also Miles v. Apex Marins Corp., 498 U.S. 19, 32 (1990).

Furthermore, although merely persuasive, the FTC stated, "in the absence of statutory or legislative history to the definition of "actual damages", the term should be given its ordinary meaning of compensatory damages; it should include damages for mental anguish and not be limited to out-of-pocket losses." Schein, *FTC Informal Staff Letter* (Oct. 27, 1980).

In *McCollough v. Johnson, Rodenburg & Lauinger*, L.L.C., 637 F.3d 939, 957 (9th Cir. 2011) the trial court gave the following jury instructions:

> Actual damages include damages for personal humiliation, embarrassment, mental anguish and emotional distress. There is no fixed standard or measure in the case of intangible items such as humiliation, embarrassment, mental anguish or emotional distress. Mental and emotional suffering and distress pass under various names such as mental anguish, nervous shock, and the like. It includes all highly unpleasant mental reactions such as fright or grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea. The law does not set a definite standard by which to calculate compensation or mental and emotional suffering and distress. Neither is there any requirement that any witness express an opinion about the amount of compensation that is appropriate for the kind of law.

Based upon the above analysis, to award actual damages to compensate for emotional distress injuries is consistent with Congressional intent and existing case law. To not do so, however, would result in a slap on the wrist for this collector and only encourage Defendant and other bad debt collectors to continue to abuse debtors in such fashion, especially in Michigan.

Additionally, many courts have held that expert testimony, such as from a doctor, is not necessary to prove up actual damages.[6] This matter is not dissimilar to Jenkins. *Jenkins v. Eastern Asset Management, LLC*, E.D. Missouri (August 12, 2009) – Ex. 8. In Jenkins, a debt collector called a debtor at her place of employment more than once after being instructed to stop. The collector also threatened to sue the consumer despites its lack of intent and ability to

---

[6] *McNally v. Client Servs., Inc.* 2008 WL 2397489 (W.D. Pa. June 11, 2008) (consumers testimony sufficient);*DeGeorge v. LTD Fin. Servs., L.P.*, 2008 WL 905913 (W.D.N.Y. Mar. 31, 2008); *Nelson v. Equifax Info. Servs., L.L.C.*, 522 F. Supp. 2d 1222, 1235, 1239 (C.D. Cal. 2007).

sue the consumer. The instant case did not involve a threat to sue but did involve revealing information to Plaintiff's employer. Jenkins was awarded $2,000.00 in actual damages as well as $1,000.00 in statutory damage. While this case is not fully analogous, it is somewhat comparative. Based upon the above acts that indirectly threatened Plaintiff's employment and caused her to experience embarrassment over Defendant's acts and the fact that she had bad debt, Defendant requests $2,000.00 in actual damages plus $1,000.00 in statutory damages as well as costs and reasonable attorney fees.

3. **Plaintiff is entitled to costs and reasonable attorney fees.**

The Fair Debt Collection Practices Act is a fee shifting statute. A prevailing plaintiff is entitled to recover costs and reasonable attorney fees. 15 U.S.C. 1692 The Sixth Circuit has held that an award of attorney fees to a prevailing consumer is "mandatory". *Purtle v. Eldridge Auto Sales,* 91 F.3d 797, 802 (6th Cir. 1996) (TILA). Fee shifting statutes must be liberally construed to effectuate their remedial purpose. Failure to consider the statutory goals in awarding fees is an abuse of discretion.

> "After a careful review of the record, we conclude that the district court abused its discretion in this case. One of the purposes behind both the Magnuson-Moss Warranty Act and the MCPA is to provide, via an award of attorney fees, a means for consumers to protect their rights and obtain judgments where otherwise prohibited by monetary constraints. See *Skelton v General Motors Corp*, 500 F. Supp 1181, 1189 (ND Ill, 1980), rev'd on other grounds 660 F.2d 311 (CA 7, 1981), and Smolen, supra at 297. Thus, because both of these statutes are remedial in nature, their provisions must be liberally construed to effectuate their intended goals. See Price v Long Realty, Inc, 199 Mich. App. 461, 471; 502 N.W.2d 337 (1993). *Jordan v Transnational Motors, Inc.*, 212 Mich App. 94, 97- 98; 537 N.W.2d 471; (1995).

Attorney fees are properly calculated using the "lodestar" method: i.e the number of hours reasonably expended multiplied by a reasonable hourly rate. *Hensley v Eckerhart, supra.* at 433 - 34. The U. S Supreme Court recently reaffirmed the dominance of the lodestar method to

11

determine attorney fees under fee shifting statutes. *Perdue v Kenny A.*, 130 S. Ct. 1662; 176 L. Ed. 2d 494 (2010).

Attached, as Ex. 4 is the time record of plaintiff's attorney, showing 7.5 hours expended on this case. (*See* Ex. 3 – Affidavit). Plaintiff requests an hourly rate of $225.00 for his counsel, for total fees of $1,687.50. Plaintiff's attorney has practiced in Michigan since 2005 and has concentrated on consumer law for the past five years and has represented consumers in numerous cases before this court and state courts. The State Bar of Michigan's Economics of Law Practice Attorney Income and Billing Rate Summary Report indicate that the median hourly rate charged by attorneys working in the field of consumer law is $300 per hour. (Ex. 7). Therefore, Plaintiff counsel's request of $225.00 per hour is per se reasonable. Additionally, the Honorable Gerald E. Rosen cited this survey and awarded this amount to another more experienced consumer protection law very recently in Atallah. *Atallah v. Law Office of Timothy E. Baxter, P.C.*, E.D. of Mich. (March 7, 2013). Furthermore, two years ago, Plaintiff's counsel was also awarded attorney fees at an hourly rate of $200.00. *Sutton v. NAH,LLC, (E.D. Mich. No 2:11-cv-10628), Todd et al. v. NAH, LLC, (E.D. Mich. No.2:11-cv-10779)*. The records attached show that Plaintiff also incurred $420.00 in costs. (Ex. 5). Consequently, Plaintiff requests reasonable attorney fees in the amount of $1,687.50 and costs in the amount of $420.00 are awarded against Defendant and for Plaintiff.

## CONCLUSION

For the reasons stated above, Plaintiff requests a default judgment against the Defendant in the following amounts:

Damages

| | |
|---|---|
| Statutory Damages under the FDCPA | $1,000.00 |
| Actual Damages under the FDCPA | $2,000.00 |

12

| | |
|---|---|
| Costs and fees | <u>$2,107.50</u> |
| Total Award | $5,107.50 |

Dated: April 8, 2013

/s/*Andrew L. Campbell*
Andrew L. Campbell
Attorney for Plaintiff
653 S. Saginaw Street, Suite 201
Flint, MI 48502
(810) 232-4344
hundy24@yahoo.com
P64391

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARY DAVIS<br>Plaintiff,<br><br>v.<br><br>NATIONWIDE DEBT MANAGEMENT SOLUTIONS, L.L.C.<br>Defendant. | Case No: 2:12-cv-15694-JAC-RSW<br>Hon: Julian Abele Cook Jr. |

**PROOF OF SERVICE**

I hereby certify that on April 8, 2013 I sent a copy of Plaintiffs Motion for Default Judgment, Brief in Support with all exhibits attached and this proof of service to the following:

Nationwide Debt Management Solutions, LLC Attn. Eugene Castillo 9343 Tech Center Drive, Ste #160 Sacramento, CA 95826

by placing a copy of the above documents in an envelope, properly addressed, with sufficient postage via first class in an official United States postal receptacle located in Flint, Michigan.

Dated: April 8, 2013

/s/*Andrew L. Campbell*
Andrew L. Campbell
Attorney for Plaintiff
653 S. Saginaw Street, Suite 201
Flint, MI 48502
(810) 232-4344
hundy24@yahoo.com
P64391

1